Daniel M. Feinberg – CA State Bar No. 135983
Teresa S. Renaker – CA State Bar No. 187800
Margaret E. Hasselman – CA State Bar No. 228529
LEWIS, FEINBERG, RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA  94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
dfeinberg@lewisfeinberg.com
trenaker@lewisfeinberg.com
mhasselman@lewisfeinberg.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT L. WEIS II,<br><br>              Plaintiff,<br><br>     vs.<br><br>ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT PLAN OF KAISER FOUNDATION HEALTH PLAN INC.,<br><br>              Defendant. | Case No. C 05-05159 EDL<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:          August 1, 2006<br>Time:          9:00 a.m.<br>Courtroom:   E, 15th Floor |

## <u>TABLE OF CONTENTS</u>

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    THE EFFICIENT PROXIMATE CAUSE RULE GOVERNS MR. WEIS'S CLAIM.
        THE PREDOMINANT CAUSE RULE SET FORTH IN *McCLURE* DOES NOT
        APPLY HERE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.      Defendant Concedes that the Policy Incorporates California Law  . . . . . . . . . . . 3

        B.      The Efficient Proximate Cause Rule Is Saved From ERISA Preemption . . . . . . 5

        C.      The *McClure* Test Does Not Apply to Mr. Weis's Claim . . . . . . . . . . . . . . . . . . 9

                1.      The SPD Does Not Contain Exclusionary Language to Trigger the
                        *McClure* Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                2.      *McClure's* "Predominant Cause" Test is Not the Same as the Efficient
                        Proximate Cause Test  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                3.      AIG Did Not Apply the "Efficient Proximate Cause" or
                        "Predominant Cause" Tests in Deciding Mr. Weis's Claim  . . . . . . . . . 14

IV.     UNDER ANY STANDARD OF CAUSATION, MR. WEIS IS ENTITLED TO
        DISMEMBERMENT BENEFITS FOR HIS LOSS OF SIGHT . . . . . . . . . . . . . . . . . . 16

        A.      The Accident Was the Efficient Proximate Cause of Mr. Weis's Loss of
                Sight . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                1.      Mr. Weis Had Vision in his Left Eye Before the Accident  . . . . . . . . . . . 17

                2.      AIG's Claim Denial Was Based on Unreliable Evidence  . . . . . . . . . . . 17

        B.      The Accident Was Also the Predominant Cause of Mr. Weis's Loss of
                Sight . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

V.      CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# **TABLE OF AUTHORITIES**

**Federal Cases**

Bergt v. Retirement Plan for Pilots Employed by Markair, Inc., 293 F.3d 1139
(9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Blankenship v. Liberty Life Assur. Co., 2004 WL 1878211 (N.D. Cal. 2004) . . . . . . . . . . . . . 18

Buce v. Allianz Life Ins. Co., 247 F.3d 1133 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 4

Elliot v. Fortis Benefits Ins. Co., 337 F.3d 1138 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 9

Harris v. The Epoch Group, L.C., 357 F.3d 822 (8th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 4

Henry v. Home Ins. Co., 907 F.Supp. 1392 (C.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

Jenkins v. Montgomery Industries, 77 F.3d 740 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 5

Kanne v. Connecticut Gen. Life Ins. Co, 867 F.2d 489 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . 8

Kentucky Association of Health Plans, Inc. v. Miller, 538 U.S. 329 (2003) . . . . . . . . . . 5, 6, 8, 9

Khatchatrian v. Continental Casualty Co., 198 F. Supp.2d 1157 (C.D. Cal. 2002),
affirmed, 332 F.3d 1227 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . 11

Lockheed Corp. v. Spink, 517 U.S. 882 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

McClure v. Life Ins. Co. Of N. Am., 84 F.3d 1129 (9th Cir. 1996) . . . . . . . . . . . . . 9, 10, 11, 20

Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724 (1985) . . . . . . . . . . . . . . . . . . . . . . 8

Moskowite v. Everen Capital Corp., 2005 WL 1910941 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . 4

Plumb v. Fluid Pump Services, 124 F.3d 849 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Rush Prudential HMO, Inc., v. Moran, 536 U.S. 355 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Security Life In. Co. v. Meyling, 146 F.3d 1184 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 8

Serrato v. John Hancock Life Ins. Co., 31 F.3d 882 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 8

Unum Life Ins. Co. v. Ward, 526 U.S. 358 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Wang Laboratories, Inc. v. Kagan, 990 F.2d 1126 (9th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . 4

**State Cases**

Alessandro v. Massachusetts Cas. Ins. Co., 42 Cal.Rptr. 630, 232 Cal.App.2d 203 (1965) . . . . 21

Arata v. California- Western States Life Ins. Co., 123 Cal. Rptr. 631, 50 Cal. App. 3d 821
(1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 16

Brooks v. Metropolitan Life Ins. Co., 27 Cal. 2d 305, 163 P.2d 689 (1945) . . . . . . . . . 11, 12, 16

Garvey v. State Farm Fire and Casualty Co., 257 Cal. Rptr. 292, 48 Cal.3d 395 (1989)  . . . 13, 14

Mariscal v. Old Republic Life Ins. Co., 42 Cal. App. 4th 1617, 50 Cal. Rptr.2d 224 (1996) . . . 12

McMackin v. Great American Reserve Ins. Co., 22 Cal. App.3d 428, 99 Cal. Rptr. 227
    (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Miller v. United Ins. Co., 113 Cal. App.2d 493, 248 P.2d 113 (1952)  . . . . . . . . . . . . . . . . . 12

Sabella v. Wisler, 27 Cal. Rptr. 689, 59 Cal. 2d 21 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Shafer v. American Casualty Co., 53 Cal. Rptr. 446, 245 Cal. App.2d 1 (1966)  . . . . . . . . 13, 16

Slobojan v. Western Travelers Life Ins. Co., 70 Cal. 2d 432, 74 Cal. Rprtr. 895,
    (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

Williams v. Hartford Accident and Indemnity Co., 204 Cal. Rptr. 453, 158 Cal. App. 3d 229
    (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

**Federal Rules**

Fed. R. Evid. 703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**State Statutes**

California Civil Code §§ 2531 - 2679 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

California Civil Code §2626 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

California Insurance Code §§ 280 - 287 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

California Insurance Code § 530 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

California Insurance Code §§ 2030 - 2056 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

California Insurance Code §§ 10170 - 10172 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Other Authorities**

ANNOTATION, INJURY OR DISABILITY RESULTING FROM MEDICAL TREATMENT FOR ACCIDENT
AS PROXIMATELY CAUSED BY ORIGINAL ACCIDENT WITHIN COVERAGE OF ACCIDENT OR
DISABILITY INSURANCE, 25 A.L.R.3d 1386 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

OLIVER SACKS, *STEREO SUE*, THE NEW YORKER, JUNE 19, 2006 . . . . . . . . . . . . . . . . . . . . 21, 22

I.     **INTRODUCTION.**

Plaintiff Robert Weis accidentally jammed his thumb flush into his left eye and lost all vision in the eye.  Although emergency surgery temporarily restored his vision, Mr. Weis permanently lost all vision in his left eye after complications developed.  Mr. Weis requested accidental dismemberment benefits under the terms of Defendant Accidental Death and Dismemberment Benefit Plan of Kaiser Foundation Health Plan Inc. ("Plan").  AIG denied his claim and Mr. Weis sued.

On May 23, 2006, Mr. Weis moved for summary judgment on his claim for benefits for the total loss of sight in one eye under the terms of the Plan.  Mr. Weis argued that AIG should have applied California's "efficient proximate cause" rule to his claim and found he was entitled to benefits.  *See* Docket No. 15, Plaintiff's Motion for Summary Judgment ("P's Opening Brief").

Defendant Plan, in its Cross Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment (Docket No. 17) ("Def's Brief"), turns a blind eye to several of Plaintiff's arguments.  First, Defendant does not contest that the efficient proximate cause rule was incorporated into the AIG policy insuring the Plan ("Policy").  Second, Defendant does not seriously contest that under the efficient proximate cause rule, Mr. Weis is entitled to benefits.  For these reasons alone, Mr. Weis should prevail on his motion for summary judgment.

Having abandoned any argument to prevail under the efficient proximate cause rule, Defendant attempts to confuse the issues by arguing that the efficient proximate cause rule is preempted by ERISA and therefore a federal "predominant cause" standard applies.  Defendant is wrong for three reasons – (1) the Policy incorporates California law, including the efficient proximate cause rule; (2) the efficient proximate cause rule is saved from ERISA preemption; and (3) the governing plan document, the Summary Plan Description, does not include exclusionary language that would trigger the predominant cause test.

Defendant further attempts to obscure the Court's task by suggesting that the predominant cause test is the same as the efficient proximate cause rule.  Defendant is wrong again – multiple court decisions demonstrate that the efficient proximate cause rule is more favorable to insureds.

Finally, Defendant attempts to argue that its decision was correct under the predominant cause standard. Defendant fails once again because (1) only the efficient proximate cause standard applies, and (2) undisputed facts demonstrate that Mr. Weis is entitled to benefits under any standard of causation.

For these reasons, Plaintiff requests that the Court grant his Motion and award him accidental dismemberment benefits for his total loss of vision in his left eye – a serious injury that has robbed him of depth perception.

## II.    STATEMENT OF FACTS.

The facts underlying this claim are set forth in Plaintiff's Opening Brief and in the parties' Joint Case Management Statement ("JCMS"), Docket No. 9. Plaintiff hereby incorporates those statements of facts. Defendant's Statement of Facts in its own Opening Brief ("Def's Brief"), however, leaves out several important facts and makes assertions that are inconsistent with the stipulated facts in the JCMS.

First, Defendant ignores the serious nature of Mr. Weis's accident which led to his claim for benefits for total loss of sight in one eye. Mr. Weis tripped and fell in his home on April 8, 2001. He put out his left hand to break his fall, and his left eye came into full contact with his thumb, jamming the thumb several inches into his eye socket. JCMS at 2:11-12. He saw a flash of light on impact, and the left side of his vision went black. *Id.* at 2:12-13. Defendant, however, repeatedly downplays the violence of the accident by acknowledging only that Mr. Weis "poked himself in his eye," Def's Brief at 1:20-21, and even characterizing the event as a "mere poke in the eye." Def's Brief at 2:5. Jamming one's thumb several inches into the eye socket is not a "mere" poke in the eye. Defendant's statement of facts mischaracterizes the accident.

Defendant also incorrectly conflates Mr. Weis's total loss of sight in his left eye with his retinal detachment, suggesting that if the retinal detachment began before the accident, the loss of sight must have already occurred as well. *See* Def's Brief at 3:19-20 (characterizing the causation issue to be decided as "the medical question of what caused Weis's severe retinal detachment"). In making this false equation, Defendant ignores important stipulated facts: Mr.

1   Weis had vision in his left eye before the accident, JCMS 2:19-20, and immediately following

2   the accident he had none, *id.* at 2:20-21.  Defendant also ignores the stipulated fact that surgery to

3   repair the retina temporarily restored Mr. Weis's vision, and it was not until complications

4   developed following surgery that Mr. Weis's permanent loss of vision occurred.  *Id.* at 2:21-26.

5   Given the undisputed fact that the permanent loss of sight did not occur until complications

6   developed from the surgery, it is clear that the retinal detachment and the loss of sight are not the

7   same thing.

8          Defendant acknowledged and stipulated to the above facts in the JCMS.  Its attempt to

9   distort the story of Mr. Weis's serious eye injury in its Opening Brief should not distract the

10  Court from the true facts underlying the claim.

11  **III.    THE EFFICIENT PROXIMATE CAUSE RULE GOVERNS MR. WEIS'S CLAIM.**
    **THE PREDOMINANT CAUSE RULE SET FORTH IN *McCLURE* DOES NOT**
12  **APPLY HERE.**

13         The efficient proximate cause rule arising from Calif. Ins. Code § 530 is the applicable

14  standard of causation for Mr. Weis's accidental dismemberment claim for three independent

15  reasons.  First, the Policy incorporates California law, including the efficient proximate cause

16  rule.  Second, the efficient proximate cause rule is a state insurance law saved from ERISA

17  preemption.  Third, the alternative predominant cause rule does not apply here because the

18  governing plan document, the Summary Plan Description, does not restrict covered risks to

19  losses caused by accidents "directly and independently of all other causes."

20         **A.    Defendant Concedes that the Policy Incorporates California Law.**

21         In his Opening Brief, Plaintiff argued that the efficient proximate cause rule applies to his

22  claim because the Policy provides that it is automatically "amended to conform to the minimum

23  requirements" of the statutes for the state where the Policy is delivered (in this case, California).

24  P's Opening Brief at 10.  Defendant's Opening Brief does not dispute this point.

25         Defendant, however, may nevertheless cite the following footnote from the *Henry v.*

26  *Home Ins. Co.*, 907 F.Supp. 1392, 1398 fn. 7 (C.D. Cal. 1995) decision in its Reply Brief:

27         Henry insists that the California proximate cause test applies directly based on language
           of the Plan, which states that the "terms of this policy in conflict with the laws of the state
28         where it is delivered are amended to conform to such laws." However, the Plan at issue is

1    governed by ERISA, and as such, federal law applies, not California law.

2  This footnote from *Henry* is incorrect because it contradicts Ninth Circuit law.

3        In *Wang Laboratories, Inc. v. Kagan*, 990 F.2d 1126, 1128-29 (9th Cir.1993), the Ninth

4  Circuit held that "[w]here a choice of law is made by an ERISA contract, it should be followed,

5  if not unreasonable or fundamentally unfair." (Quotation omitted.)  In *Wang*, the "ERISA plan

6  stated that the rights and obligations of the parties were to be 'governed by the law of

7  Massachusetts, and all questions pertaining to the validity and construction of such rights and

8  obligations shall be determined in accordance with such law.'" *Id*. at 1128.  The Ninth Circuit

9  held that this choice of law provision was valid and required application of the Massachusetts

10  statute of limitations. *Id*. at 1129.  *See also Moskowite v. Everen Capital Corp.*, 2005 WL

11  1910941, *2 (N.D. Cal. 2005) (Enforcing Illinois choice of law provision in ERISA plan).

12        The *Henry* court mistakenly concluded that the plan's incorporation of California law was

13  void because of ERISA preemption.  In *Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1148 (11th

14  Cir. 2001), the Eleventh Circuit explained why this argument is wrong:

15        [W]hen private contracting parties formulate a choice-of-law provision that, with a view
16        to defining liability, incorporates state legal doctrines, those doctrines are not emanations
         of state authority, they are simply a convenient shorthand for what the private contracting
17        parties wish to agree to. The pertinent question to be addressed with respect to such a
         choice-of-law provision is, therefore, not a question of the possible irreconcilability of
18        directives issuing from two different sovereignties - one federal and one state. The
         pertinent question, in short, is not one of "preemption" in the conventional sense of that
19        term. The pertinent question is whether the principles of liability agreed upon by the
         parties are inconsistent with the language of ERISA or the policies that inform that statute
20        and animate the common law of the statute.

21  In *Buce*, the plan stated that it "is to be interpreted in accordance with the laws of the State of

22  Georgia." *Id*. at 1147.  The Eleventh Circuit therefore applied the Georgia "accidental means"

23  doctrine to an ERISA benefit claim because the state law was not inconsistent with the terms or

24  policies of ERISA.  *Id*. at 1149.  *See also Harris v. The Epoch Group, L.C.*, 357 F.3d 822, 825

25  (8th Cir. 2004) ("Although parties may not agree an ERISA plan shall be construed according to

26  the principles of state law rather than principles of the federal common law, the appellees have

27  not brought to our attention any principle which prohibits parties from borrowing from state law

28  when drafting the substantive terms of an ERISA-governed benefit plan") (citation omitted);

1   *Jenkins v. Montgomery Industries*, 77 F.3d 740, 743 (4th Cir. 1996) (insurance policy calling for

2   construction of its provisions "according to laws of the State of South Carolina" requires

3   application of state case law relating to interpretation of insurance exclusion); *Plumb v. Fluid*

4   *Pump Services*, 124 F.3d 849, 861 (7th Cir. 1997) (same with respect to application of Illinois

5   state law).

6          In the present case, the Policy provision amending the Policy to conform to California

7   statutes is not unreasonable or fundamentally unfair.  Since the Plan provides benefits to

8   California residents, it makes sense that the Policy should conform to California law.  Moreover,

9   the efficient proximate cause rule is not inconsistent with the terms or policies of ERISA.  No

10  provision of the ERISA statute addresses the level of causation required for liability under

11  accident insurance plans.  Nor is it fundamentally unfair to allocate greater risk to an insurer

12  where multiple causes contribute to a loss.

13         The Plan sponsor, Kaiser Foundation Health Plan, and AIG agreed to an insurance policy

14  contract that incorporated California law by reference.  Since ERISA does not "mandate what

15  kind of benefits employers must provide if they choose to have such a plan," *Lockheed Corp. v.*

16  *Spink*, 517 U.S. 882, 887 (1996), this choice was simply a matter of plan design, and does not

17  create a conflict between state and federal regulation of the plan.  Therefore, the Court should

18  uphold the contract provision amending the Policy to conform to California law.

19         **B.      The Efficient Proximate Cause Rule Is Saved From ERISA Preemption.**

20         In his Opening Brief, Plaintiff argued that the efficient proximate cause rule also governs

21  his claim because it is a state insurance law saved from ERISA preemption.  P's Opening Brief at

22  11.  Defendant agrees that the applicable test for ERISA preemption is set forth in *Kentucky*

23  *Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341-42 (2003).  Defs' Brief at 15:22-

24  16:4.  In *Kentucky Association*, the Supreme Court revised the standard for determining whether

25  a state law falls within ERISA's Savings Clause.  The Court held that, "for a state law to be

26  deemed a 'law which regulates insurance' under § 1144(b)(2)(A), it must satisfy two

27  requirements.  First, the state law must be specifically directed toward entities engaged in

28  insurance.  Second, . . . the state law must substantially affect the risk pooling arrangement

between the insurer and the insured." *Kentucky Association*, 538 U.S. at 341-42 (citations omitted).

Defendant does not dispute the second prong of the *Kentucky Association* test, i.e., that the efficient proximate cause rule substantially affects the risk pooling arrangement. Defendant, however, asserts that California Insurance Code § 530 is not saved from ERISA preemption because it is a general rule of state law rather than a law which regulates insurance. Def's Brief at 17:4-23. The Supreme Court rejected a similar argument in *Unum Life Ins. Co. v. Ward*, 526 U.S. 358 (1999), a case that Defendant conspicuously avoids citing.

In *Unum Life*, the Supreme Court held that California's notice-prejudice rule is a law which regulates insurance, and is therefore saved from ERISA preemption. The Court stated that the notice-prejudice rule "by its very terms, is directed specifically at the insurance industry and is applicable only to insurance contracts." *Id*. at 368 (quotation omitted). The *Unum Life* Court further observed "Our survey of California law reveals no cases where the state courts apply the notice-prejudice rule as such outside the insurance area. Nor is this surprising, given that the rule is stated in terms of prejudice to an 'insurer' resulting from untimeliness of notice." *Id*. at 368 (quotation omitted).

The Savings Clause analysis is the same for the efficient proximate cause rule, which is based on Calif. Ins. Code § 530. Ins. Code § 530 is stated in terms of the liability of an "insurer" and is applicable only to insurance contracts. In addition, a survey of California law by Plaintiff's counsel reveals no cases where the state courts apply the efficient proximate cause rule as such outside of the insurance area. Second Declaration of Daniel Feinberg in Support of Plaintiff's Motion for Summary Judgment ("Second Feinberg Dec.") at ¶ 4. There are over 50 California cases (reported and unreported) using the phrase "efficient proximate cause," and all of these cases arise from claims for insurance coverage. *Id*.

In *Unum Life*, Unum further argued "that the notice-prejudice rule is merely an industry-specific application of the general principle that disproportionate forfeiture should be avoided in the enforcement of contracts" and therefore is not truly an insurance regulation. 526 U.S. at 368 (quotation omitted). The Supreme Court rejected this argument: "It is no doubt true that diverse

1   California decisions bear out the maxim that 'law abhors a forfeiture' and that the notice-

2   prejudice rule is an application of that maxim.  But it is an application of a special order, a rule

3   mandatory for insurance contracts, not a principle a court may pliably employ when the

4   circumstances so warrant."  *Id*. at 370.

5          Defendant's Savings Clause argument echoes Unum's failed argument in *Unum Life*:

6   Defendant asserts that the efficient proximate cause rule is merely a codification of "the common

7   law proximate cause standard . . . for the interpretation of insurance contracts."  Defs' Brief at

8   17:14-16.  Defendant is wrong for two reasons.

9          First, the efficient proximate cause rule is a special application of "proximate cause."  As

10  discussed below in Section III.C.2, there are numerous proximate cause tests.  Calif. Ins. Code §

11  530, however, mandates that insurance contracts use a particular standard of causation for

12  determining liability.  The efficient proximate cause rule is not used by California courts outside

13  of the insurance context.  Second Feinberg Dec. at ¶ 4.

14         Second, although the term "proximate cause" is also used in tort law, the term has a

15  different meaning in the insurance context: "proximate cause has a different meaning in

16  insurance cases than it has in tort cases.  In tort cases the rules of proximate cause are applied for

17  the single purpose of fixing culpability, . . . [but] in insurance cases the concern is not with the

18  question of culpability or why the injury occurred, but only with the nature of the injury and how

19  it happened."  Annotation, *Injury or Disability Resulting From Medical Treatment For Accident*

20  *As Proximately Caused By Original Accident Within Coverage of Accident or Disability*

21  *Insurance*, 25 A.L.R.3d 1386 (1993).

22         Defendant also argues Calif. Ins. Code § 530 is a general rule of state law because it was

23  originally enacted in 1872 as part of the Civil Code, and did not become part of the Insurance

24  Code until 1935.  Defs' Brief at 17:9-14.  Defendant's argument is disingenuous – California did

25  not have an Insurance Code until 1935.  Prior to 1935, all California insurance laws were part of

26  the Civil Code.  *See* Historical and Statutory Notes, West's Ann. Cal. Civ. Code §2626, attached

27  to Second Feinberg Dec. as Exhibit 4.  In 1935, Calif. Civil Code §§ 2531 - 2679 were repealed

28  and re-enacted as the new Insurance Code.  *Id*.  A survey of the statutes moved from the Civil

1  Code to the Insurance Code demonstrates the absurdity of Defendant's argument.  The Insurance

2  Code sections adopted in 1935 include the definition of an insurable interest (Ins. Code §§ 280 -

3  287), rules governing the allocation of risk and indemnity (Ins. Code §§ 2030 - 2056), and

4  restrictions on the payment of life insurance benefits (Ins. Code §§ 10170 - 10172).  Obviously,

5  all of these statutes regulate insurance despite the fact that they were originally enacted as part of

6  the Civil Code.

7       Finally, Defendant, relying on case law that pre-dates the Supreme Court's decisions in

8  *Unum Life* and *Kentucky Association*, argues that the efficient proximate cause rule is preempted

9  as a general law of contract interpretation.  Defs' Brief at 16:14-17:2.  Defendant' reliance on

10  these superseded cases is mistaken for two reasons.

11      First, Calif. Ins. Code § 530 is *not* a law of contract interpretation.  Ins. Code § 530 states

12  a mandatory requirement for allocating risk in insurance policies.  The Section states the

13  minimum permissible standard of causation for an insurer's liability, rather than a rule of

14  interpretation.  In this regard, the efficient proximate cause rule is more like the mandated-benefit

15  statute upheld by the Supreme Court in *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S.

16  724 (1985), than the general rules of contract interpretation applied to insurance policies, such as

17  *contra proferentem*, held preempted in cases cited by Defendant.  *See, e.g., Serrato v. John*

18  *Hancock Life Ins. Co.*, 31 F.3d 882, 886 (9th Cir. 1994) (holding that *contra proferentem* is not

19  saved from ERISA preemption).

20      Second, the Supreme Court announced in *Kentucky Association* that it was "mak[ing] a

21  clean break from the McCarran-Ferguson factors" for determining the reach of ERISA's Savings

22  Clause.  538 U.S. at 341.  Due to the Supreme Court's revised analysis of the Savings Clause in

23  *Kentucky Association,* Plaintiff submits that the holdings in the line of cases represented by

24  *Kanne v. Connecticut Gen. Life Ins. Co*, 867 F.2d 489 (9th Cir. 1988), and *Security Life In. Co. v.*

25  *Meyling*, 146 F.3d 1184 (9th Cir. 1998), are limited.[1]

26  ───────────────

27      [1] In contrast, in making this "clean break" with the past, *Kentucky Association*, 538 U.S.
    at 341, the Court characterized its prior rulings in *Metropolitan Life*, *Unum Life*, and *Rush*
28  *Prudential HMO, Inc., v. Moran*, 536 U.S. 355 (2002), as being consistent with the new standard

In *Kentucky Association*, the Supreme Court expanded the scope of ERISA's Savings Clause by eliminating the McCarran-Ferguson factors as criteria for deciding whether a state law regulated insurance. Although the Ninth Circuit stated that prior Savings Clause cases are "well worth considering" following *Kentucky Association* and *Unum Life*, the Ninth Circuit also stated that *Unum Life* "took a much more generous approach than [prior case law] in analyzing whether a law was specifically directed at insurance." *Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1143, 1145 (9th Cir. 2003).[2] Thus, in *Elliott*, the Ninth Circuit stated that a Montana statute directed at insurance company claims processing "probably meets the first requirement of the [*Kentucky Association*] test, since the [statute] 'by its very terms' is directed at insurance and contains provisions applicable only to insurance companies." *Id*. at 1145.

Because the efficient proximate cause rule is specifically directed at entities engaged in insurance, and substantially affects the risk-pooling arrangement between insurer and insured, it is saved from preemption by ERISA's Savings Clause and should be applied in Mr. Weis's case.

### C. The *McClure* Test Does Not Apply to Mr. Weis's Claim.

Defendant argues that the causation standard articulated in *McClure v. Life Ins. Co. Of N. Am.*, 84 F.3d 1129 (9th Cir. 1996), applies to Mr. Weis's claim. Defs' Brief at 9:22 - 11:17. In *McClure*, the Ninth Circuit held that when an accident insurance policy contains exclusionary language, such as the requirement in the AIG Policy that a loss result from a covered risk "directly and independently of all other causes," the standard of causation depends on whether the exclusionary language is conspicuous to the insured:

> if the exclusionary language here in question is conspicuous it would bar recovery if a preexisting condition substantially contributed to the disability. This could result in a denial of recovery even though the claimed injury was the predominant or proximate cause of the disability. On the other hand, we hold that if the language is inconspicuous, a policy holder reasonably would expect coverage if the accident were the predominant or proximate cause of the disability.

---

announced. *Kentucky Association*, 538 U.S. at 338-41.

[2] Notably, *Elliot* does not include any of the Savings Clause cases relied on by Defendant among the prior cases that are "well worth considering."

84 F.3d at 1136. Defendant argues both that (1) the second prong of the *McClure* test applies to Mr. Weis's claim, Def's Brief at 10:6-24, and (2) that it is equivalent to the California "efficient proximate cause" test, Def's Brief at 11:14. Defendant is wrong on both counts.[3]

1.    The SPD Does Not Contain Exclusionary Language to Trigger the <em>McClure</em> Test.

The *McClure* test does not apply here because the Court's holding only applies where the operative plan document contains exclusionary language, such as "directly and independently." Here, the governing plan document does not contain that exclusion at all.

Defendant admits in its Opening Brief that Mr. Weis did not receive the Policy underlying the Plan before submitting his claim. Def's Brief at 3:8-10. Instead, he received only the Summary Plan Description ("SPD"). *Id.* The SPD does not contain the same standard of causation as the Policy. The SPD states only that "Accidental Death and Dismemberment benefits are not payable for death and dismemberment due to . . . most natural illnesses or diseases, self-inflicted injury or suicide, participation in a felony, and declared or undeclared acts of war or armed aggression." Second Feinberg Dec., Exhibit 3 at SPD 36. The Policy's requirement that a loss result "directly and independently of all other causes" from an accident, POL 007, is absent from the SPD. Therefore, the language required to trigger *McClure's* two-part analysis does not appear in the SPD.

Where an SPD and a governing plan document conflict, participants may enforce whichever document is more favorable to them. In *Bergt v. Retirement Plan for Pilots Employed by Markair, Inc.*, 293 F.3d 1139, 1145 (9th Cir. 2002), the Ninth Circuit followed holdings by the Second, Sixth, Tenth and Eleventh Circuits, and ruled that "it would be unfair to have employees bear the burden of a conflicting SPD [Summary Plan Description] and plan master

---

[3] Defendant also asserts that Mr. Weis "incorrectly characterized *McClure* as being decided under Nevada state law." Defs' Brief at 10, fn. 1. Defendant did not cite to any page of Plaintiff's Opening Brief for this proposition because Plaintiff made no such argument. Instead, Plaintiff stated that the Ninth Circuit adopted the *McClure* causation test as a matter of "federal common law" and "did not consider California's efficient proximate cause rule because the case arose in Nevada." P's Opening Brief at 11, fn. 4.

1   document and, thus . . . [the Court will enforce] the provision *more favorable* to the employee. . .

2   " (Emphasis in original.)  In this case, the Plan Summary is more favorable to Mr. Weis and he is

3   entitled to enforce its terms.

4       Moreover, the SPD's exclusion of coverage for losses "due to . . . *most* natural illnesses

5   or diseases" (SPD 36; emphasis added) is vague and ambiguous, since it means that losses due to

6   *some* natural illnesses or diseases are covered, but leaves Plan participants, such as Mr. Weis, in

7   the dark as to which losses due to these causes will be covered.  As stated in Plaintiff's Opening

8   Brief, any ambiguity is construed in favor of providing coverage under the doctrine of contra

9   proferentem.  *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539-40 (9th Cir. 1990).

10       Because the "directly and independently" language that triggers the applicability of the

11   *McClure* test does not appear in the SPD and Mr. Weis may enforce the SPD over the Policy, the

12   *McClure* causation test is inapplicable.  As discussed above, the efficient proximate cause rule

13   arising from Calif. Ins. Code § 530 governs Mr. Weis's claim.

14           2.     *McClure's* "Predominant Cause" Test is Not the Same as the Efficient

15                   Proximate Cause Test.

16       Defendant asserts that the predominant cause test set forth in *McClure*, 84 F.3d at 1135, is

17   the same as the efficient proximate cause rule described in *Brooks v. Metropolitan Life Ins. Co.*,

18   27 Cal. 2d 305, 309-10, 163 P.2d 689, 691 (1945).  Defs' Brief at 11:8-17.  A comparison of the

19   judicial formulations of the two proximate cause standards shows that this is not true.

20       In *McClure*, the Ninth Circuit adopted the predominant cause test stated in *Henry v.

21   Home Ins. Co.*, 907 F.Supp. 1392, 1398 (C.D. Cal. 1995), "requiring the plaintiff to show that the

22   accident was the predominant, as opposed to remote, cause of the injury."  84 F.3d at 1135. The

23   *Henry* court, in turn, recognized that California courts apply a *different* proximate cause test, but

24   chose to adopt another standard as a matter of federal common law.  907 F.Supp. at 1398

25   (discussing *Slobojan v. Western Travelers Life Ins. Co.*, 70 Cal. 2d 432, 443, 74 Cal. Rprtr. 895,

26   902 (1969)).[4]

27

28       [4]  As shown in Sections III A and B, above, the *Henry* court was mistaken in not
following California insurance law.

The California efficient proximate cause rule is more liberal than the predominant cause rule because it sets forth two alternative tests:

> the presence of pre-existing disease or infirmity will not relieve the insurer from liability if the accident is the proximate cause of death; and that recovery may be had even though a diseased or infirm condition appears to actually contribute to cause the death if the accident sets in progress the chain of events leading directly to death, or if it is the prime or moving cause.

*Brooks,* 27 Cal. 2d at 309-10, 163 P.2d at 691. Thus, under *Brooks*, an accident is the efficient proximate cause of the loss if it (1) is the prime (i.e., predominant) cause, *or* (2) sets in motion the chain of events leading to the loss.

California courts continue to apply the *Brooks* efficient proximate cause rule in accidental death and dismemberment cases. In addition to the cases cited in Plaintiff's Opening Brief at pp. 7 - 8, *see Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1625-26, 50 Cal. Rptr.2d 224, 228 (1996); *McMackin v. Great American Reserve Ins. Co.*, 22 Cal. App.3d 428, 439, 99 Cal. Rptr. 227, 234 (1971); *Slobojan, supra*, 70 Cal. 2d at 443, 74 Cal. Rprtr. at 902; *Miller v. United Ins. Co.*, 113 Cal. App.2d 493, 499, 248 P.2d 113, 117 (1952). Federal courts applying California law in diversity cases also continue to use the *Brooks* efficient proximate cause rule in accidental death and dismemberment claims. *See, e.g., Khatchatrian v. Continental Casualty Co.*, 198 F. Supp.2d 1157, 1162-63 (C.D. Cal. 2002), *affirmed*, 332 F.3d 1227 (9th Cir. 2003).

A review of California accidental death and dismemberment cases shows that the efficient proximate cause rule imposes a lesser burden on claimants than the predominant cause test. In *Arata v. California- Western States Life Ins. Co.*, 123 Cal. Rptr. 631, 633-34, 50 Cal. App. 3d 821, 825 (1975), the insured was a hemophiliac who died from a hemorrhage following an accidental fall. The insured's pre-existing medical condition, rather than his accident, was the predominant cause of death: "If the preexisting condition of hemophilia type 8 did not exist, the accident and the resulting subdural bleeding alone would not have caused the death of the insured. A person who did not have hemophilia type 8 would not have died from the accident or from the subdural bleeding." *Id*., 123 Cal. Rptr. at 632, 50 Cal. App.3d at 823-24. The *Arata* court nevertheless held that the plaintiff was entitled to recover accidental death benefits because

1    the loss was "set in motion" by an accident. *Id.*, 123 Cal. Rptr. at 634, 50 Cal. App.3d at 825.

2         In *Slobojan*, the insured was a police officer who died while chasing a suspect on foot.

3    74 Cal. Rptr. at 901, 70 Cal.2d at 442.  The insured tripped and fell during the chase, and then

4    collapsed and died of a heart attack.  *Id.*  Although an autopsy disclosed that the insured suffered

5    from coronary artery disease, the California Supreme Court upheld a judgment in favor of the

6    plaintiff because the chase and accidental fall "set the chain of events in motion" that led to

7    death. 74 Cal. Rptr. at 901 and fn. 2, 70 Cal.2d at 442 and fn. 2.

8         In *Shafer v. American Casualty Co.*, 53 Cal. Rptr. 446, 447, 245 Cal. App.2d 1, 3 (1966),

9    the insured also suffered from the pre-existing condition of arteriosclerosis and an enlarged heart.

10   The insured "sustained a bruise on his arm and shock" in an automobile accident.  *Id.*  Two days

11   later, he died of a heart attack.  *Id.*  Although "'but for' the decedent's diseased condition his

12   death would not have occurred when it did," the court nevertheless concluded that the accident

13   was the efficient proximate cause of death.  53 Cal. Rptr. at 451, 245 Cal. App.2d at 10.  The

14   *Shafer* court stated that "the dispositive issue is whether the accident set in progress the chain of

15   events leading directly to the death. . . ."  53 Cal. Rptr. at 451, 245 Cal. App. 2d at 9.

16        As shown by the *Brooks* line of cases, under California law, an insurer is liable under an

17   accidental death and dismemberment policy if an accident (1) is the prime cause, *or* (2) sets in

18   motion the chain of events leading to the loss.  The insurer must pay the claim even if an

19   excluded risk is a "but for" cause of the loss.

20        *Garvey v. State Farm Fire and Casualty Co.,* 257 Cal. Rptr. 292, 296, 48 Cal.3d 395,

21   403-04 (1989), relied on by Defendant, cites *Brooks* for its application of the efficient proximate

22   cause rule to a property insurance claim.  Defendant is mistaken in asserting that *Garvey* equates

23   efficient proximate cause with predominant cause.  Defs' Brief at 11:14 - 17.  Rather, *Garvey*

24   states that "efficient proximate cause" is defined "*alternatively* as the 'one that sets others in

25   motion,' and as 'the predominating or moving efficient cause.'" *Garvey*, 257 Cal. Rptr. at 296,

26   48 Cal. 3d at 403 (emphasis added; quoting *Sabella v. Wisler*, 27 Cal. Rptr. 689, 59 Cal. 2d 21

27   (1963)).

28        In *Garvey*, the plaintiffs and the defendant insurer disputed whether the included risk of

negligent construction or the excluded risk of earth movement was the efficient proximate cause of the property loss suffered when a house addition began to pull away from the main structure. 257 Cal. Rptr. at 302, 48 Cal. 3d at 412.  The court's focus, not surprisingly, was on the "predominating cause" prong of the efficient proximate cause rule because the plaintiffs did not contend that negligent construction set in motion the earth movement of the hillside.  *Id*. Nothing in *Garvey*, however, suggests that the court was overruling *Brooks* or changing its two-prong test for efficient proximate cause.  To the contrary, the *Garvey* court cited *Brooks* as the basis for its ruling.  257 Cal. Rptr. 292, 296, 48 Cal.3d 395, 403-04.

Defendant's assertion that the "efficient proximate cause" rule is equivalent to *McClure's* "predominant cause" rule misstates the law.  The efficient proximate cause rule is the only causation test properly applicable to Mr. Weis's claim.

3.     AIG Did Not Apply the "Efficient Proximate Cause" Test or "Predominant Cause" Tests in Deciding Mr. Weis's Claim.

Defendant also argues that in deciding Mr. Weis's claim, AIG applied the "predominant cause" test without regard to the exclusionary language in the Policy.  Def's Brief at 7:18-9:17. Defendant's claim is demonstrably false.  Not only is the "efficient proximate cause" test not the same as *McClure's* "predominant cause" test, as discussed above, but AIG used a standard that was more difficult for Mr. Weis to meet than either of these two tests in deciding his claim.  AIG literally applied the exclusionary language in the Policy requiring that a loss result from an accident "directly and independently of all other causes."

The administrative record in this case is full of references to AIG's use of the "directly and independently" exclusionary language in administering Mr. Weis's claim, despite Defendant's argument in its Opening Brief.  First, as discussed in Plaintiff's Opening Brief, AIG invoked the exclusionary language in its communications with Dr. Brown, Mr. Weis's treating physician, and with Dr. Young, the consulting ophthalmologist who reviewed Mr.Weis's claim for AIG.  AIG asked Dr. Brown if Mr. Weis's loss of sight was due to "an accident direct and independent of all other causes," to which Dr. Brown responded "No."  Declaration of Daniel Feinberg in Support of Motion for Summary Judgment filed 5/23/06 ("First Feinberg Dec."),

1    Exhibit 2 at AR 0211.  Given the unenforceability of the exclusionary language, Dr. Brown's

2    answer is completely irrelevant to Mr. Weis's entitlement to benefits.  Moreover, Dr. Brown

3    could have been referring to complications from surgery or a pre-existing partial retinal tear

4    completed by the April 8, 2001 accident.  AIG nevertheless relied on this irrelevant answer

5    repeatedly throughout the claims process, and Defendant continues to cite it even after

6    acknowledging the language's inapplicability in its Opening Brief.  Def's Brief at 5:26-6:6,

7    13:10-17, 14:15-15:8.  AIG also referred Dr. Young to the literal language of the Policy in

8    requesting his review of Mr. Weis's claim.  Second Feinberg Dec., Exhibit 5 at AR 0297.

9         Additional records from AIG's claim review process also indicate that the individuals

10   considering Mr. Weis's claim all evaluated it in terms of whether the accident "directly and

11   independently of all other causes" resulted in the loss, despite AIG's counsel's advice that the

12   exclusionary language was inconspicuous and therefore would not be applied literally by a court.

13   Second Feinberg Dec., Exhibit 5 at AR 0243-46.[5]  For example, a May 12, 2004 "File Activity

14   Sheet" signed by Myra Zimmerman mentions the exclusionary language no less than four times.

15   *Id*. at AR 0026-28.  And a May 26, 2004 claim review by Ms. Zimmerman also notes "Agree

16   with denial loss not direct & independent & caused in whole or in part by, or resulted in whole or

17   in part by [sic] sickness, disease."  *Id*. at AR 0025.

18        Also, in  referring Mr. Weis's appeal to the ERISA Appeals Committee on August 6,

19   2004, AIG noted Dr. Brown's response of "No" to the question whether the loss of sight was

20   "due to an accident direct and independent of all other causes" (Second Feinberg Dec., Exhibit 5

21   at AR 0021), and it exactly quoted one of the Policy's exclusionary phrases, in which it states

22   that losses are not covered if "caused in whole or in part by, or resulting in whole or in part from"

23   sickness or disease.  *Id*. at AR 0022.  The ERISA Appeals Committee, therefore, was asked to

24   apply literally the policy's exclusionary language.

25        Most significantly, AIG's letters to Mr. Weis denying his claim – both on the original

26   claim and on appeal – base their denials on the assertion that Mr. Weis did not sustain a bodily

27

28        [5]  In fact, the "directly and independently" exclusionary language was not simply
     inconspicuous – it has no application here whatsoever.  *See* Section III.C.

injury "caused by an accident resulting directly and independently of all other causes."  First

Feinberg Dec., Exhibit 2 at AR 041-46.  As discussed above, the "efficient proximate cause" test

does not contemplate denial of a claim based on contribution of an excluded cause where a

covered cause is either (1) the predominant cause of the loss or (2) sets in motion the chain of

events leading to the loss.  Given AIG's repeated references to the "directly and independently"

language in the Policy, it is clear that it did not apply the "efficient proximate cause" test in

deciding Mr. Weis's claim.

**IV.    UNDER ANY STANDARD OF CAUSATION, MR. WEIS IS ENTITLED TO
         DISMEMBERMENT BENEFITS FOR HIS LOSS OF SIGHT.**

      **A.    The Accident Was the Efficient Proximate Cause of Mr. Weis's Loss of Sight.**

        As shown in Plaintiff's Opening Brief, the April 8, 2001 accident in which Mr. Weis

jammed his thumb flush into his eye was the efficient proximate cause of his loss of sight in his

left eye.  The accident set in motion the chain of events that led directly to the loss of sight and/or

was the predominant cause of his loss of sight.  *See Brooks*, 27 Cal.2d at 309-10, 163 P.2d 689,

691; *Shafer*, 53 Cal. Rptr. at 448-450, 245 Cal. App.2d at 4-7.  In its Opening Brief, Defendant

does not seriously dispute that Plaintiff prevails under the efficient proximate cause rule, and

does not argue with Plaintiff's explanation that the thumb accident set in motion the chain of

events leading directly to his loss of sight.  *See generally* Def's Brief at 9-18.

        Mr. Weis is entitled to benefits even if he would not have lost his sight but for his pre-

existing condition because the accident set in motion the chain of events leading directly to his

loss of sight in his left eye.  Mr. Weis accidentally jammed his left thumb flush into his left eye

socket.  He saw a white flash of light on impact, felt a searing pain, and then the left side of his

vision went black.  The accident set in motion the following chain of events: (1) emergency

appointment with Dr. Brown, who diagnosed elevated pressure and detached retina; (2) eye

surgery restoring pre-accident eyesight; and (3) complications from surgery resulting in

permanent loss of all vision.  Defendant does not attempt to distinguish Mr. Weis's claim from

the holding in *Arata v. California-Western States Life Ins. Co.*, 123 Cal. Rptr. 631, 50 Cal. App.

3d 821, 823-24 (1975) (finding insured entitled to accidental death benefit even though he would

1  not have died from his slip and fall but for his hemophilia).

2      Defendant's only attempt to argue that Mr. Weis should not prevail under the efficient

3  proximate cause test is a reference to one absurd comment by Dr. Young that the thumb-jabbing

4  accident had "no causal effect" on Mr. Weis's loss of sight.  Def's Brief at 12:4-5.  As discussed

5  in Plaintiff's Opening Brief, it defies common sense for Defendant to claim that Mr. Weis's

6  violent accident on April 8, 2001, in which he jammed his thumb "several inches into his eye

7  socket," Joint Case Management Statement ("JCMS") at 2:12, caused no injury to his eye.  *See*

8  Plaintiff's Opening Brief at 9:17-10:5.

9                    1.    Mr. Weis Had Vision in his Left Eye Before the Accident.

10     Even assuming Dr. Young is correct that Mr. Weis's retina was damaged prior to his

11 violent accident, the conclusion does not follow that he had already lost all vision in his left eye.

12 Mr. Weis has never argued that his left eye was a model of healthy function prior to the accident:

13 it is undisputed that his left-eye vision prior to the accident was 20/400 or Counting Fingers at 3

14 Feet.  JCMS at 2:18-20.  However, limited vision – even legal blindness – is not the same as total

15 blindness.  The Policy insures only against *total* loss of vision in an eye, POL 011, not legal

16 blindness.  There is no evidence that Mr. Weis had lost *all* vision in his left eye prior to the

17 accident.  In fact, it is a stipulated fact that Mr. Weis had vision in his left eye prior to the

18 accident and lost all vision immediately following.  JCMS 2:19-21.  The loss became permanent

19 only following complications from surgery.  *Id*. at 2:24-26.  It goes against common sense to

20 suggest that such a violent accident did not contribute to Mr. Weis's retinal detachment, elevated

21 eye pressure, and need for surgery, which led to his permanent loss of sight.  Therefore,

22 Defendant's assertion that Mr. Weis's loss of vision occurred prior to the accident on April 8,

23 2001, is illogical and contrary to both Policy terms and the stipulated facts.

24                    2.    AIG's Claim Denial Was Based on Unreliable Evidence.

25     Defendant fails in its attempt to show that the evidence cited in its claim denial is reliable,

26 *see* Def's Brief at 11:25-12:17.  Defendant does not dispute that AIG asked Dr. Young and Dr.

27 Brown to use the wrong standard of causation in evaluating Mr. Weis's claim.  *See id.*, P's

28 Opening Brief at 12:1-13:11, Section III.C.3 above.  This fact alone renders useless all of the

physicians' statements that the accident was not the cause of the loss in evaluating whether the accident was the *efficient proximate cause* of the loss.

Further, Dr. Young's second-hand statement of Dr. Brown's opinion is unreliable. Defendant argues that "no evidence" shows that the information in Dr. Young's hearsay report is unreliable. Def's Brief at 13:6. Hearsay, however, is excluded from evidence when not subject to an exception because it is viewed as inherently unreliable. *See* P's Opening Brief at 12:7-24. Also, there is reason to doubt the accuracy or completeness of Dr. Young's hearsay statement of Dr. Brown's opinion. First, Dr. Young's account of Dr. Brown's supposed statement that Mr. Weis's "advanced detachment with massive fibrovascular proliferation" could not have been the result of the April 2001 accident directly contradicts Dr. Brown's first-person statement that the majority of the evidence indicated Mr. Weis's retinal detachment was not related to his previous condition. First Feinberg Dec., Exhibit 2 at AR 0161-62. Given this apparent contradiction, it is "difficult to understand why [AIG] would not obtain an official opinion in writing" to clarify Dr. Brown's opinion. *See Blankenship v. Liberty Life Assur. Co.*, 2004 WL 1878211 (N.D. Cal. 2004) at *10.

Second, Dr. Young's statement of Dr. Brown's supposed opinion echoes almost exactly Dr. Young's own statement from his original review of Mr. Weis's claim. On April 2, 2004, Dr. Young, in asserting in his initial report to AIG that the April 8, 2001 injury was not the cause of the detachment, speculated: "More likely it brought Mr. Weis' attention to the fact that the vision of the left eye had changed." Second Feinberg Dec., Exhibit 5 at AR 0262. In his July 2, 2004 report regarding Mr. Weis's appeal, Dr. Young claimed that Dr. Brown stated that "more than likely, the poke in the eye incident brought Mr. Weiss' [sic] attention to the fact that the vision had changed in the left eye." First Feinberg Dec., Exhibit 2 at AR 0155. The remarkable similarity in the phrasing of these two items suggests that Dr. Young's summary of his conversation with Dr. Brown may have been altered, consciously or unconsciously, to mesh with his own previous opinion.

These same facts also show that Defendant is wrong in asserting that Dr. Brown "flip-flopped between saying that the poke in the eye was not, then was, and then again was not the

cause of Weis's 'advanced detachment with massive fibrovascular proliferation.'" Def's Brief at 13:12-14. First, Dr. Brown's first statement (answering "No" to the question whether the loss was "due to an accident direct and independent of all other causes" (First Feinberg Dec., Exhibit 2 at AR 0211)) does not reflect Dr. Brown's opinion as to whether the accident was the efficient proximate cause or predominant cause of Mr. Weis's loss of vision. Since AIG did not ask Dr. Brown to explain his answer, he did not elucidate what other causes contributed to Mr. Weis's loss of sight. *Id.* Thus, Dr. Brown did not state whether complications from surgery, Mr. Weis's pre-existing eye problems, or some other cause contributed to the loss of sight. Dr. Brown's second opinion explained how Mr. Weis's loss occurred and stated his opinion that the accident, via surgery, caused the loss of sight. *Id.* at AR 0161-62. Dr. Brown's purported third statement, as expressed by Dr. Young, was likely mischaracterized as discussed above, and in any event was also subject to the same misunderstanding of the standard of causation as his first statement.

In addition, Defendant's citation to Fed. R. Evid. 703, and cases applying it, for the proposition that Dr. Young "may base his opinion" on Dr. Brown's statement – the authenticity of which is suspect – is completely inapposite. *See* Def's Brief at 12:11-12:3. Rule 703 governs admissibility of testimony of testifying experts. Admissibility of Dr. Young's testimony is not at issue here: his statements are (a) not testimony, and (b) already in evidence by virtue of their inclusion in the claim's administrative record. Rules governing whether a trier of fact should hear an expert's opinion have no bearing here, where the issue whether the Court will choose to believe Dr. Young's hearsay summary of a telephone conversation with Dr. Brown that was not transcribed, recorded, or confirmed in writing.

Because the facts indisputably show that the April 8, 2001, accident was the efficient proximate cause of Mr. Weis's total loss of sight in his left eye, he is entitled to benefits under the terms of the Plan.

### B.   The Accident Was Also the Predominant Cause of Mr. Weis's Loss of Sight.

Even if Defendant were correct that *McClure's* "predominant cause" test applies to Mr. Weis's claim, Plaintiff still prevails because the April 8, 2001 accident was the predominant cause of his loss of sight in his left eye.

It is undisputed in this case that Mr. Weis had vision in his left eye immediately prior to the April 2001 accident. The parties stipulated that after Mr. Weis jammed his thumb "several inches into the eye socket," JCMS 2:12, he saw a flash of light, and then "the left side of his vision went black." *Id.* at 2:13. For the left side of his vision to have gone black, Mr. Weis obviously had to have vision in the eye prior to the accident. The parties further stipulated that "prior to the April 8, 2001 accident and subsequent surgery, Mr. Weis's vision in his left eye was 20/400 or "counting fingers at three feet." JCMS 2:19-21. It is further undisputed that "[i]mmediately following the accident . . ., Mr. Weis had no vision in his left eye." *Id.* at 2:20-22. Mr. Weis's vision returned for a short time after surgery, but following complications including pressure fluctuations and clouding of the cornea, he has lost all vision in the left eye. *Id.* at 2:21-26. As discussed above, Defendant's belated suggestion that he had already lost total vision in his left eye before his violent accident is speculation contrary to stipulated facts, the medical records, and to common sense.

Given these undisputed facts, it is impossible for Defendant to argue that the violent April 2001 accident, in which Mr. Weis jammed his entire thumb into his eye, was not the predominant cause of his total loss of sight. Had Mr. Weis not experienced such a violent accident, the pressure in his eye would not have been so high, the surgery would not have been so complex, and the resulting complications which led to his total loss of sight would not have ensued. *See McClure*, 84 F.3d at 1133 (loss resulting from "process of nature" relates back to original accident). There is absolutely no evidence that Mr. Weis's total loss of sight would have occurred in the absence of the accident.

Even if Mr. Weis had a pre-existing tear in the retina, it was still the accident that finished the damage to the eye and led to the total loss of all vision. Retinal tears do not always instantly result in a total loss of vision. In *Williams v. Hartford Accident and Indemnity Co.*, 204 Cal. Rptr. 453, 158 Cal. App. 3d 229 (1984), the insured had a pre-existing partially torn retina, causing minor obstruction in his field of vision. He then aggravated the tear by jogging, causing further retinal tears which worsened his vision, leading to surgery. The surgery eventually resulted in hemorrhaging and the total loss of sight in the injured eye. *Williams*, 158 Cal. App.

3d at 231.  The court upheld the denial of the claim – not because the insured had a pre-existing retinal tear prior to the jog – but only because the insured's act of jogging did not constitute an accident.  *Id.* at 234-35.  The court noted that there was nothing extraordinary about the insured's jog other than its result:  there was no evidence of "falling, slipping, overexertion, or of any external force striking the body of the appellant."  *Id.* at 234, citing *Alessandro v. Massachusetts Cas. Ins. Co.*, 42 Cal.Rptr. 630, 232 Cal.App.2d 203, 207 (1965).

Mr. Weis's case is distinguishable from *Williams* by the occurrence of a serious accident – Mr. Weis fell and jammed his entire thumb into his eye.  It is clear from the rationale of *Williams* that the existence of a pre-existing retinal tear does not prevent a vision loss from being covered by an accidental death and dismemberment plan where vision remained in the eye before the accident.  Even if Mr. Weis had a pre-existing partial retinal detachment (a fact which is much in dispute, *see* Section IV.A above), the accident would have worsened the detachment, caused elevated eye pressure, and led him to have surgery.  Therefore, the accident was still the predominant cause of his loss.

Defendant's arguments defending its decision to deny Mr. Weis's claim all fail for the reasons already discussed above in Section IV.A in relation to the efficient proximate cause standard.

## V.    CONCLUSION.

The total loss of vision in one eye is a major loss, even when the eye previously had only limited vision.  Even an eye with limited vision, like Mr. Weis's left eye, provides stereo vision, which is crucial to our visual interaction with the world because it is the only way we can perceive three-dimensional depth.  Famed neurologist Oliver Sacks recently wrote that the loss of stereo vision can have a profound negative effect on a person's perception of his or her surroundings – "the only way to actually *perceive* depth rather than judge it is with binocular stereoscopy."  Oliver Sacks, *Stereo Sue*, THE NEW YORKER, June 19, 2006, at 64, 66.  Stereoscopy makes the difference between snow appearing "to fall in a flat sheet" and feeling oneself "within the snowfall."  *Id.* at 73.  In fact, "[s]ome people, losing binocular vision for a long period, find the experience very disturbing" and have difficulty recognizing familiar objects.

1   *Id*. at 66.  Mr. Weis's left eye provided him with depth perception prior to his April 2001

2   accident, but the accident and subsequent surgery robbed him of that vision, and Mr. Weis has

3   thus been "reduced to a two-dimensional world."  *See id.* at 66.

4         The facts demonstrate that under the terms of the Plan and applicable law, Mr. Weis is

5   entitled to benefits for that loss.  He requests that the Court grant his motion for summary

6   judgment and deny Defendant's cross-motion.

7

8   Dated: June 20, 2006                          Respectfully submitted,

9                                                 LEWIS, FEINBERG,
                                                  RENAKER & JACKSON, P.C.
10

11                                      By:    ___/s/_____
                                              Daniel M. Feinberg
12                                            Attorneys for Plaintiff

13

14
     [S:\Cases\Weis, R 0456\Motions\SJ opp and reply.mwg.wpd]
15

16

17

18

19

20

21

22

23

24

25

26

27

28